Citation Nr: 1340187 
Decision Date: 12/05/13 Archive Date: 12/20/13

DOCKET NO. 07-34 113 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Montgomery, Alabama


THE ISSUE

Entitlement to an initial disability rating in excess of 30 percent for a psychiatric disability. 


REPRESENTATION

Veteran represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

Veteran









ATTORNEY FOR THE BOARD

M. Moore, Associate Counsel


INTRODUCTION

The Veteran served on active duty from September 1983 to June 2005.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a January 2006 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Albuquerque, New Mexico, which, in pertinent part, granted service connection for depression with trouble sleeping, assigning a 10 percent initial evaluation effective June 9, 2005. In February 2006, the Veteran submitted a notice of disagreement and subsequently perfected her appeal in October 2007. Her case is currently under the jurisdiction of the VA RO in Montgomery, Alabama.

In December 2009, the Veteran presented sworn testimony during a video conference hearing in Montgomery, Alabama, which was chaired by the undersigned Veterans Law Judge. A transcript of the hearing has been associated with the Veteran's claims file.

The Board previously remanded the Veteran's claim for an increased initial rating to the Appeals Management Center (AMC) for further evidentiary development in April 2010 and March 2011. 

Subsequent to the Board's most recent remand, the AMC issued a January 2012 rating decision increasing the Veteran's initial evaluation for dysthymic disorder to 30 percent effective June 9, 2005. Because the AMC did not assign the maximum disability rating possible, the appeal for a higher evaluation remains before the Board. See AB v. Brown, 6 Vet. App. 35 (1993) (where a claimant has filed an NOD as to an RO decision assigning a particular rating, a subsequent RO decision assigning a higher rating, but less than the maximum available benefit, does not abrogate the pending appeal).


FINDINGS OF FACT

1. Prior to May 19, 2011, the Veteran's service-connected psychiatric disability was manifested by no more than occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks due to such symptoms as depressed mood, anxiety, sleep impairment, and mild impaired memory.

2. From May 19, 2011 to the present, the Veteran's service-connected psychiatric disability is manifested by no more than occupational and social impairment with reduced reliability and productivity due to such symptoms as depressed mood, anxiety, sleep impairment, and social isolation.


CONCLUSIONS OF LAW

1. Prior to May 19, 2011, the criteria for an initial disability rating in excess of 30 percent for a psychiatric disability have not been met. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. § 4.130, Diagnostic Code 9434 (2013).

2. From May 19, 2011 to the present, the criteria for the assignment of an disability rating of 50 percent, but no higher, for a psychiatric disability have been met. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. § 4.130, Diagnostic Code 9434 (2013).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Board has thoroughly reviewed all the evidence in the Veteran's claims file. While the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, the evidence submitted by the Veteran or on his behalf. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (the Board must review the entire record, but does not have to discuss each piece of evidence). The analysis below focuses on the most salient and relevant evidence and on what this evidence shows, or fails to show, on the claim. The Veteran must not assume that the Board has overlooked pieces of evidence that are not explicitly discussed herein. See Timberlake v. Gober, 14 Vet. App. 122 (2000) (the law requires only that the Board address its reasons for rejecting evidence favorable to the Veteran).

The Board must assess the credibility and weight of all evidence, including the medical evidence, to determine its probative value, accounting for evidence which it finds to be persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the Veteran. Equal weight is not accorded to each piece of evidence contained in the record; every item of evidence does not have the same probative value. When all the evidence is assembled, the Board is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. See Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

I. Duties to Notify and Assist

VA has a duty to notify and a duty to assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5103, 5103A; 38 C.F.R. §§ 3.159, 3.326(a) (2013).

Proper notice from VA must inform the claimant and her representative, if any, prior to the initial unfavorable decision on a claim by the AOJ of any information and any medical or lay evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004); Quartuccio v. Principi, 16 Vet. App. 183 (2002). These notice requirements apply to all five elements of a service-connection claim (Veteran status, existence of a disability, a connection between the Veteran's service and the disability, degree of disability, and effective date of the disability). Dingess v. Nicholson, 19 Vet. App. 473 (2006). Information that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded must be included. Id.

Neither the Veteran nor her representative has alleged prejudice with respect to notice, as is required. See Shinseki v. Sanders, 129 S. Ct. 1696 (2009). None is found by the Board. Indeed, VA's duty to notify has been more than satisfied. The Veteran was notified via a letter dated in July 2005 of the criteria for establishing service connection, the evidence required in this regard, and her and VA's respective duties for obtaining evidence. A March 2006 letter notified her of how VA determines disability ratings and effective dates. These letters accordingly addressed all notice elements and were sent prior initial adjudication of the Veteran's claim. Nothing more is required.

The Board also concludes VA's duty to assist has been satisfied. The Veteran's service treatment records, VA treatment records, and VA examination reports are in the file. The Board notes that the Veteran has identified and provided a release of information for private treatment records from a licensed professional counselor (LPC), D. D. S. VA attempted to obtain these treatment records in August 2011. D. D. S. responded to VA's request with an August 2011 letter summarizing the Veteran's treatment but did not provide the actual treatment records or notes. In this case, the Board accepts D. D. S.'s assertions regarding the severity of the Veteran's psychiatric symptoms without reviewing the underlying treatment records to verify her conclusions. As such, remand to attempt to obtain the underlying treatment records is not necessary.

The record indicates that the Veteran underwent VA examinations to evaluate her low back disability in August 2005 and January 2009. The reports from those examinations have been included in the claims file for review. The examinations involved a review of the claims file, a thorough examination of the Veteran, and an opinion that was supported by sufficient rationale. Therefore, the Board finds that the examinations of record are adequate to decide the claim. See Barr v. Nicholson, 21 Vet. App. 303, 311 (2007) (affirming that a medical opinion is adequate if it provides sufficient detail so that the Board can perform a fully informed evaluation of the claim). 

Further, there is no evidence indicating that there has been a material change in the severity of the Veteran's service-connected psychiatric disability since she was last examined. 38 C.F.R. § 3.327(a) (2013). The Board notes that the letter from the Veteran's private LPC indicates more severe symptoms than were reported at the most recent VA examination. However, the Board is granting an increased rating of 50 percent in light of this evidence, as discussed in detail below. There is no indication that the Veteran's psychiatric disability has worsened beyond the criteria for a 50 percent evaluation. The medical evidence does not suggest symptoms resulting in deficiencies in most area of social and occupational impairment or total social and occupational impairment or that the Veteran's disability has worsened to this point. Any possible worsening is accounted for in the grant of an increased rating of 50 percent and there is no need for a new VA examination at this time. 

Some discussion of the Veteran's personal hearing is also necessary. The individual presiding over a hearing must comply with the duties set forth in 38 C.F.R. § 3.103(c)(2). See Bryant v. Shinseki, 23 Vet. App. 488 (2010). These duties consist of (1) fully explaining the issues and (2) suggesting the submission of evidence that may have been overlooked. They were met here. The issue on appeal was identified. Information was also elicited from the Veteran concerning her contentions regarding the nature and severity of her psychiatric symptoms. Notably, the Board previously remanded the Veteran's case to obtain VA psychiatric treatment records based on her hearing testimony. 

As there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of this claim, the Board finds that any such failure is harmless. See Mayfield v. Nicholson, 19 Vet. App. 103 (2005), rev'd on other grounds, Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006).



II. Merits of the Claim

The Veteran's service-connected psychiatric disability has been initially evaluated as 30 percent disabling under Diagnostic Code 9434. She seeks a higher initial rating.

Disability evaluations are determined by evaluating the extent to which a veteran's service-connected disability adversely affects his or her ability to function under the ordinary conditions of daily life, including employment, by comparing his or her symptomatology with the criteria set forth in the Schedule for Rating Disabilities. The percentage ratings represent as far as can practicably be determined the average impairment in earning capacity resulting from such diseases and injuries and the residual conditions in civilian occupations. Generally, the degrees of disability specified are considered adequate to compensate for considerable loss of working time from exacerbation or illness proportionate to the severity of the several grades of disability. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. § 4.1 (2013). Separate diagnostic codes identify the various disabilities and the criteria for specific ratings. If two disability evaluations are potentially applicable, the higher evaluation will be assigned to the disability picture that more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2013). Any reasonable doubt regarding the degree of disability will be resolved in favor of the veteran. 38 C.F.R. § 4.3 (2013).

The Veteran's entire history is reviewed when making a disability determination. See 38 C.F.R. § 4.1 (2013). Where the Veteran timely appealed the rating initially assigned for the service-connected disability within one year of the notice of the establishment of service connection for it, VA must consider whether the Veteran is entitled to "staged" ratings to compensate him for times since filing his claim when his disability may have been more severe than at other times during the course of his appeal. See Fenderson v. West, 12 Vet. App. 119 (1999). 

The evaluation of the same disability under various diagnoses, known as pyramiding, is generally to be avoided. See 38 C.F.R. § 4.14 (2013). The critical element in permitting the assignment of several ratings under various diagnostic codes is that none of the symptomatology for any one of the disabilities is duplicative or overlapping with the symptomatology of the other disability. See Esteban v. Brown, 6 Vet. App. 259, 261-62 (1994). 

Under Diagnostic Code 9434, the General Rating Formula for Mental Disorders is used. The General Rating Formula provides that a 30 percent rating is assigned for occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, mild memory loss (such as forgetting names, directions, recent events).

A 50 percent rating is assigned for occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships.

A 70 percent rating is assigned for occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); inability to establish and maintain effective relationships.

Finally, a 100 percent rating is assigned for total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. See 38 C.F.R. § 4.130, Diagnostic Code 9400 (2013).

Although the Veteran's major depression is rated under the General Rating Formula, the use of the term "such as" in 38 C.F.R. § 4.130 indicates that the listed symptoms are not intended to constitute an exhaustive list. Rather, the symptoms listed under the General Rating Formula for Mental Disorders are to serve as examples of the type and severity of symptoms or their effects that would justify a particular rating. See Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002). Accordingly, the symptoms to be considered when rating a veteran's anxiety disorder are not limited to those listed in 38 C.F.R. § 4.130. Instead, VA shall consider all symptoms of a veteran's anxiety disorder that affect his level of occupational and social impairment, including, if applicable, those identified in the fourth edition of the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (DSM-IV).

Within the DSM-IV, Global Assessment Functioning (GAF) scores are a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." See Carpenter v. Brown, 8 Vet. App. 240, 242 (1995); see also Richard v. Brown, 9 Vet. App. 266, 267 (1996). A GAF score is, of course, just one part of the medical evidence to be considered and is not dispositive. The same is true of any physician's statement as to the severity of a disability. It remains the Board's responsibility to evaluate the probative value of any doctor's opinion in light of all the evidence of record.

A GAF score of 61 to 70 is defined as some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning "pretty well," with some meaningful interpersonal relationships. Diagnostic and Statistical Manual of Mental Disorders (4th ed.1994).

As referenced above, the Veteran was first examined in conjunction with her claim in August 2005. At that time, she complained of depressed mood, frequent crying, and mild sleep impairment, resulting in moderate impairment in psychosocial functioning. She reported actively socializing within her church group and a positive relationship with her grown stepdaughter with no other significant relationships. She denied a history of suicide attempts, assaultiveness, or psychiatric hospitalizations. She reported taking an antidepressant, but denied any therapy or other treatment. The examiner observed appropriate appearance and grooming, unremarkable speech, psychomotor activity, and thought process and content, constricted affect, depressed mood, intact judgment, and average intelligence. She had no hallucinations, delusions, suicidal or homicidal thoughts, inappropriate behavior, or problems maintaining minimum personal hygiene. She did report mild obsessive or ritualistic behavior in the form of double checking the locks of her house at night. Based on testing, the examiner noted normal remote memory and mildly impaired recent and immediate memory, and moderate to severe depression. She diagnosed the Veteran with recurrent moderate major depression and assigned her a GAF score of 65. She concluded that the Veteran's psychiatric disability resulted in decreased efficiency, decreased reliability, and impaired work, family, and other relationships only during periods of stress and occasional decreased productivity and inability to perform work tasks, all of which were mild or transient.

The Veteran was more recently examined in January 2009. At that time, she complained of transient, mild symptoms of depression that caused mild to moderate deficits in psychosocial functioning and moderate to severe anxiety when she encountered situations related to obtaining employment. She indicated that she took an antidepressant that worked well, other than in crises, and did not participate in group or individual therapy. The examiner observed that the Veteran was tense with constricted affect, anxious mood, unremarkable speech, and easy distractability. She had average intelligence, normal memory, no hallucinations or delusions, no homicidal or suicidal ideation, and reported some insomnia. The examiner diagnosed the Veteran with major depressive disorder and assigned a GAF score of 70. He concluded that her psychiatric disability resulted in transient or mild symptoms that decrease work efficiency and ability to perform occupational tasks only during periods of significant stress with no evidence of total occupational and social impairment, deficiencies in the areas of judgment, thinking, family relations, work, mood, or school, reduced reliability and productivity, or intermittent periods of inability to perform occupational tasks.

In addition to the VA examination reports, the medical evidence of record includes VA treatment records which are generally consistent with the VA examination reports prior to May 19, 2011. VA treatment records reflect the same complaints noted in the VA examination reports and include GAF scores ranging from 65 to 70 indicating mild symptoms. Significantly, these VA treatment records are negative for any reports of more serious symptoms, such as suicidal ideation, hallucinations, or delusions, and refer to the Veteran's depression as "controlled with medication." See VA treatment records, July 2009, September 2009. 

Beginning in May 2011, VA and private treatment records show some more serious impairment in the Veteran's functioning. Specifically, a May 19, 2011 VA treatment record indicates that the Veteran's major depression was increased and a May 23, 2011 record notes that the Veteran was having severe anxiety dealing with stress at work and that her VA psychiatrist would write her a note for one week off from work. Further, an August 2011 letter from the Veteran's private LPC, D. D. S., high moderate to severe symptoms of depression, sleep problems, social isolation, and anxiety. She indicated that these symptoms improved at times, but also resulted in problems in personal and professional relationships.

The claims file also includes lay statements and hearing testimony from the Veteran describing her psychiatric symptoms. Her statements are consistent with the medical evidence of record. Notably, she reported that she had retired due to her psychiatric disability, but then indicated that she had recently begun working again.

Prior to May 19, 2011, based on the medical and lay evidence of record, the Board finds that the Veteran does not meet the criteria for an initial disability rating in excess of 30 percent for her psychiatric disability. There is no evidence of symptoms commensurate of the next higher rating, such as may produce reduced reliability or productivity, panic attacks more than once per week, impaired judgment or abstract thinking, or difficulty in establishing or maintaining effective work and social relationships. Notably, prior to May 2011, there is no indication that the Veteran needed time off from work or had difficulty with relationships. Significantly, at her August 2005 VA examination, she reported being actively involved with her church group and a positive relationship with her stepdaughter. The evidence of record simply does not support symptoms severe enough to warrant an initial rating in excess of 30 percent prior to May 19, 2011.

From May 19, 2011 to the present, with resolution of reasonable doubt in the favor of the Veteran, the Board finds that her major depression has resulted in occupational and social impairment with reduced reliability and productivity. Specifically, the Veteran has exhibited anxiety, depression, impaired sleep, irritability, and social isolation. Further, she has required one week off from work because of her increased anxiety. Although her GAF score was rated at 65, indicating some mild symptoms or some difficulty in social, occupational, or school functioning, the letter from her private LPC notes more severe symptoms described as high moderate to severe. This level of severity equates to the symptoms set forth in the criteria for a 50 percent rating. Accordingly, with resolution of all reasonable doubt in favor of the Veteran, the Board finds that the Veteran's symptoms more closely approximate a 50 percent rating for her psychiatric disability as of May 19, 2011.

However, although a higher rating is warranted as of May 2011, the evidence of record does not reflect symptomatology of major depression that would meet the criteria for a rating in excess of 50 percent for this period. While the evidence of record demonstrates occupational and social impairment with reduced reliability and productivity, it does not demonstrate deficiencies in most areas or total occupational and social impairment. Specifically, the Veteran is currently employed and has only required one week off from work due to her psychiatric symptoms. Although the private LPC noted problems in her personal and professional relationships, there is no indication that she has no inability to establish and maintain effective relationships. Further, there are no reports of near continuous panic or depression, suicidal ideation, spatial disorientation, or neglect of personal hygiene or appearance. As such, a higher rating of 70 or 100 percent is not warranted. 

Additionally, the Board notes that there is no indication in the evidence of record that the Veteran's psychiatric symptomatology warranted other than the currently assigned 30 and 50 percent disability ratings throughout the appeal period. As such, assignment of additional staged ratings is not warranted. See Fenderson, supra.

The Board has also considered the potential application of other various provisions, including 38 C.F.R. § 3.321(b)(1), for exceptional cases where schedular evaluations are found to be inadequate. See Schafrath v. Derwinski, 1 Vet. App. 589 (1991). Ordinarily, the VA Schedule will apply unless there are exceptional or unusual factors which would render application of the schedule impractical. See Fisher v. Principi, 4 Vet. App. 57, 60 (1993). According to the regulation, an extraschedular disability rating is warranted upon a finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization that would render impractical the application of the regular schedular standards. See 38 C.F.R. § 3.321(b)(1) (2013); Fanning v. Brown, 4 Vet. App. 225, 229 (1993).

In Thun v. Peake, 22 Vet. App. 111, 115-16 (2008), the United States Court of Appeals for Veterans Claims (Court) set forth a three-step inquiry for determining whether a veteran is entitled to an extraschedular rating. First, as a threshold issue, the Board must determine whether the veteran's disability picture is contemplated by the rating schedule. If so, the rating schedule is adequate and an extraschedular referral is not necessary. If, however, the veteran's disability level and symptomatology are not contemplated by the rating schedule, the Board must turn to the second step of the inquiry, that is whether the veteran's exceptional disability picture exhibits other related factors such as those provided by the regulation as "governing norms." These include marked interference with employment and frequent periods of hospitalization. Third, if the first and second steps are met, then the case must be referred to the VA Under Secretary for Benefits or the Director of the Compensation and Pension Service to determine whether, to accord justice, the veteran's disability picture requires the assignment of an extraschedular rating.

With regard to the Veteran's service-connected psychiatric disability, the evidence of record does not reflect that the Veteran's disability picture is so exceptional as to not be contemplated by the rating schedule. There is no unusual clinical picture presented, nor is there any other factor which takes the disability outside the usual rating criteria. The rating criteria for the Veteran's currently assigned 30 and 50 percent disability ratings specifically contemplate her symptoms, including anxiety, depression, impaired impulse control, and sleep impairment. The Board must consider any additional psychiatric symptoms that the Veteran exhibits, even if they are not specifically identified in the rating criteria. Thus, the Board finds that the Veteran's disability picture is adequately contemplated by the rating schedule. See Mauerhan, supra. As such, the threshold issue under Thun is not met for the Veteran's service-connected psychiatric disability and any further consideration of governing norms or referral to the appropriate VA officials for extraschedular consideration is not necessary.

In short, the evidence does not support the proposition that the Veteran's service-connected disability presents such an exceptional or unusual disability picture as to render impractical the application of the regular schedular standards and to warrant the assignment of an extraschedular rating under 38 C.F.R. § 3.321(b)(1) (2013). Thus, referral of this issue to the appropriate VA officials for consideration of an extraschedular evaluation is not warranted.

For all the foregoing reasons, the Board finds that the claim of entitlement to an initial disability rating in excess of 30 percent for a psychiatric disability must be denied prior to May 19, 2011 and that an initial disability rating of 50 percent for a psychiatric disability is appropriate from May 19, 2011 to the present. In reaching the above-stated conclusions, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the Veteran's claim of entitlement to an increased initial rating for her psychiatric disability, except as granted herein, that doctrine is not applicable. 38 U.S.C.A. § 5107(b) (West 2002); 38 C.F.R. § 3.102 (2013); see also Ortiz v. Principi, 274 F.3d 1361, 1365 (Fed. Cir. 2001).


ORDER

Entitlement to an initial disability rating in excess of 30 percent for a psychiatric disability is denied prior to May 19, 2011.

Entitlement to an initial disability rating of 50 percent, but not higher, for a psychiatric disability is granted from May 19, 2011 to the present, subject to the laws and regulations governing the award of monetary benefits.



____________________________________________
JONATHAN B. KRAMER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs